FILED


April 26, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 12:47 PM



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### COURT OF WORKERS' COMPENSATION CLAIMS
### AT MEMPHIS

| | |
|---|---|
| SEAN HANNIGAN,<br>　　　　　Employee,<br>v.<br>PARAMOUNT UNIFORM RENTAL,<br>　　　　　Employer,<br>And,<br><br>ACCIDENT FUND INS. CO.<br>　　　　　Insurance Carrier. | Docket No.: 2015-08-0359<br><br>State File Number: 61215-2015<br><br>Judge Allen Phillips |

---

## EXPEDITED HEARING ORDER FOR MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on March 29, 2016, upon the Request for Expedited Hearing filed by the employee, Sean Hannigan, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Hannigan seeks medical and temporary disability benefits for an alleged back injury. Paramount contends he has failed to establish a causal connection between the injury and his employment. Accordingly, the central legal issue is whether Mr. Hannigan has established, under the standards applicable to an Expedited Hearing, that his injury arose primarily out of and occurred in the course and scope of his employment at Paramount. If so, the question turns to the extent of his entitlement to medical and/or temporary disability benefits. For the reasons set forth below, the Court finds Mr. Hannigan has come forward with sufficient evidence at this time to show his injury arose primarily out of his employment and he is entitled to some of the requested benefits.[1]

### History of Claim

Mr. Hannigan is a thirty-three-year-old resident of Shelby County, Tennessee who

---

[1] The Court has attached a complete listing of the technical record and exhibits admitted at the Expedited Hearing to this Order as an appendix.

worked as a sales representative for Paramount, a uniform service. His job required delivery and pick-up of uniforms and floor mats.[2] He alleged an injury to his back on July 28, 2015, at approximately 7:40 AM while at the first stop of his assigned route. He described a burning, stabbing pain in his lower back when he stood up after bending to lift a bundle of uniforms.

Following the event, Mr. Hannigan completed his assigned route and returned to Paramount's warehouse. At approximately 1:45 PM, he reported the injury to his immediate supervisor, Michael Rhodebeck, the route supervisor. According to Mr. Hannigan, Mr. Rhodebeck "sent" him to Concentra for medical evaluation that day. For his part, Mr. Rhodebeck admits Mr. Hannigan reported an injury at approximately 1:45 PM, but he disputes that he sent Mr. Hannigan to Concentra. He contends Mr. Hannigan did not ask for medical evaluation.[3] Thus, Mr. Rhodebeck advised Mr. Hannigan he would "investigate" the claim to determine if he needed to address any safety issues. Mr. Rhodebeck testified he had no reason to question Mr. Hannigan's account. He further testified he was not aware of any prior back problems Mr. Hannigan may have suffered.

Paramount offered a video taken at its warehouse on the afternoon of July 28, purportedly between the hours of 1:00 to 3:00 PM.[4] Mr. Hannigan is seen bending, stooping, carrying, walking, and pushing carts loaded with uniform clothing and floor mats to load and unload a delivery truck. Mr. Hannigan questioned whether he was the man seen working in portions of the video but, for the most part, he did not contest the activities shown in the video. According to Mr. Rhodebeck, unloading the soiled uniforms and mats from the truck and then reloading the truck with clean items as shown in the video were a routine part of Mr. Hannigan's job. Mr. Rhodebeck also testified that after reporting the lifting incident, Mr. Hannigan did not make any additional complaints of back pain on the afternoon of July 28, 2015.

Mr. Hannigan presented at Concentra at 4:30 PM on July 28. He provided the physician a history of "lower back pain from lifting a bundle of clothes" at "7:40 am this morning." The reported onset was "sudden" and "immediately after the injury." (Ex. 1 at 1.) The physician diagnosed a lumbar strain and allowed Mr. Hannigan to return to work the following day with restrictions of occasionally lifting up to twenty pounds, occasionally pushing or pulling up to thirty pounds, and occasionally bending.

Mr. Rhodebeck testified Mr. Hannigan contacted him via text message the next morning, July 29, 2015, regarding his restrictions from Concentra. Mr. Rhodebeck replied that Paramount could accommodate the restrictions and, as an example, offered to provide an assistant to ride with Mr. Hannigan. However, Mr. Hannigan did not report to work on either July 29 or any of the next three days. As a result, Mr. Rhodebeck

---

[2] Here, "floor mats" refer to the rugs placed at the threshold of commercial establishments.
[3] Mr. Rhodebeck did testify that, if Mr. Hannigan had requested medical care, he would have sent him to Concentra.
[4] The video was not time marked, so the exact period shown and total length of the video is unknown.

2

confirmed Paramount did not place Mr. Hannigan on the work schedule as of August 2015.

On July 29, 2015, following his conversation with Mr. Rhodebeck, Mr. Hannigan went on his own to Methodist Minor Medical. The provider diagnosed a "back strain" and advised him to return in three days if he had not improved. (Ex. 2 at 1-2.) On July 31, 2015, Mr. Hannigan returned to Methodist stating he was "worse." *Id.* at 4. The provider detailed Mr. Hannigan's history as follows:

> He states that when he stood up from picking up clothes, he felt a sharp pain in his back. He has a history of two back surgeries. He was seen on 7/29 at this location for an injury that occurred on 7/28. The pain is still on the right but is now radiating to the left and down into the gluteus on both sides. He has been taking the muscle relaxer and Lortab as prescribed without any relief. He is now having worsening headaches and nausea.

*Id.*

Following the examination on July 29, the provider diagnosed a lumbar strain and recommended an orthopedic referral. *Id.*

On August 5, 2015, Paramount provided Mr. Hannigan a panel of orthopedic specialists from which he chose Dr. Christopher Ferguson. (Ex. 7.) By deposition, Dr. Ferguson testified Mr. Hannigan reported a history of sudden, sharp pain when he was bending to lift clothing. (Ex. 8 at 7.) Dr. Ferguson did note a history of prior back surgery. *Id.* Following examination, Dr. Ferguson "suspected [an] L5/S1 herniated disc" and recommended an MRI. *Id.* at 8, 9. The MRI performed on August 22, 2015, revealed stenosis at the L4-L5 level on the right and severe stenosis on the left at L5-S1. *Id.* at 11-12. According to Dr. Ferguson's testimony, Mr. Hannigan did not report any prior problems at the L5-S1 level, and Dr. Ferguson did not see any records indicating any prior issues at that level. *Id.* at 13. Dr. Ferguson recommended a referral to one of his partners, Dr. Stephen Waggoner, a spine specialist. *Id.* at 15.

Regarding causation, Dr. Ferguson testified as follows:

Q.   And based on your knowledge of Mr. Hannigan's job duties, which you've previously stated included bending over and picking up large bundles of clothes, would that be consistent with a disc herniation injury?

A.   It would.

Q.   So based again on your personal knowledge of Mr. Hannigan of his medical history, would you say to a degree of – a reasonable degree of medical certainty that Mr. Hannigan's disc herniation that you

diagnosed him with arose primarily out of and in the course of his employment with Paramount Uniform?

A.    I would say more likely than not, yes.

*Id.* at 14, *lines* 5-17. In addition, "in the absence of further information," Dr. Ferguson opined "to a reasonable degree of medical certainty" that the "cause" of the injury was lifting "a heavy bundle of clothes." *Id.* at 20.

On cross-examination, Paramount questioned Dr. Ferguson regarding whether a person who had suffered a herniated L5-S1 disc would be able to continue performing the tasks Mr. Hannigan performed on July 28, 2015, after his injury. Dr. Ferguson replied "that it depends on the degree of the herniation," referring to the L5-S1 level. (Ex. 8 at 31.) Further, since the MRI was performed one month after the injury, "things can progress" and he did not "know the degree of his herniation [at L5-S1] on the date of his injury." *Id.* at 32. When questioned as to what percentage was represented by his "more likely than not" testimony that Mr. Hannigan's injury arose out of his work for Paramount, Dr. Ferguson responded: "51 percent." *Id.* at 30. Regarding the L4-L5 level, Dr. Ferguson testified there was "more than 50 percent" relation of any aggravation to Mr. Hannigan's work activities. *Id.* at 36.

Mr. Hannigan saw Dr. Stephen Waggoner on September 12, 2015, and reported the history of injuring his back on July 28, 2015 when lifting a bundle of clothes. (Ex. 3 at 7.) Mr. Hannigan reported increased problems since seeing Dr. Ferguson, which prompted him to go to an emergency room where, according to Dr. Waggoner, another MRI "showed similar findings to the first MRI with degenerative disc disease at multiple levels." *Id.* Dr. Waggoner diagnosed acute lower back pain, a possible herniated disc at L4-5 on the right, and moderate spinal stenosis at L4-5 and L3-4. He recommended an epidural steroid injection and physical therapy. *Id.* at 10. He placed restrictions of maximum lifting of ten pounds and advised Mr. Hannigan to return in three weeks. *Id.* at 11. No other medical evidence appears in the record.

At this point, Paramount denied the claim based upon what it found to be inconsistencies between Mr. Hannigan's history and the activities shown on the video of July 28, 2015. Namely, his work during the remainder of the day was incompatible with someone who allegedly suffered an injury to his back. Further, the history of prior back surgeries caused Paramount to question the causation of this alleged injury.

Mr. Hannigan never returned to work at Paramount at any time after July 28, 2015. He testified he was unable to work but, in October 2015, he found other employment as a security guard earning $9.90 per hour. He later found a higher paying job as a delivery person for a home medical supply company where he earned $12.00 per hour from December 2015 until February 2016. Neither of these subsequent jobs required lifting over twenty pounds. He quit the medical supply job because the company

4

announced plans to offer other equipment Mr. Hannigan did not feel he could handle due to the weight. He had neither worked nor sought work since February 2016.

At the hearing, Mr. Hannigan admitted to two prior back surgeries. The first occurred in 2004 and was not work-related; the second, in 2005, was work-related. There is no evidence detailing either the cause of or specific treatment for these prior surgeries apart from Dr. Waggoner's notation of post-surgical changes at L3-4 and L4-5. (Ex. 3 at 8.) However, Mr. Hannigan testified that although he had suffered from some back pain following his surgeries, his pain was worse since the injury at issue and was distinct from any previous pain he had suffered. He also testified his pain worsened as time passed after the July 28, 2015 incident. Mr. Hannigan's wife corroborated her husband's testimony that he suffered an injury on July 28, he had not had debilitating pain before the injury, and his pain had in fact worsened over time.

Based on this proof, Mr. Hannigan argued that Dr. Ferguson provided adequate proof of causation by testifying his work caused at least "51% of the injury." Because Dr. Ferguson was an approved physician, his opinion is presumed correct but, in any event, Paramount offered no countervailing medical evidence. Mr. Hannigan described a specific incident, and his history of this injury was consistent throughout the claim. There was no proof that any pre-existing condition caused the injury at issue. Accordingly, Mr. Hannigan argued he was entitled to further medical benefits. He also contended he was entitled to "temporary total disability" benefits from August 13, 2015 (the date he first saw Dr. Ferguson) until present and then ongoing. He claimed Paramount owes him temporary total disability because, when he was placed on restricted duty, Paramount failed to place him on the work schedule.

Paramount maintained its denial based upon the video evidence and upon Dr. Ferguson's testimony. Namely, Dr. Ferguson testified the L5-S1 disc was at issue, whereas Dr. Waggoner believed treatment for the L4-5 and L3-4 levels was appropriate. Though it admitted its argument was "convoluted," Paramount contended Mr. Hannigan did not show adequate proof of causation, since the L4-5 and L3-4 levels were the subject of prior injuries and Dr. Waggoner, to whom Dr. Ferguson would defer according to his deposition testimony, has yet to opine any causal relationship between Mr. Hannigan's injury and his current condition. Regarding temporary disability benefits, Paramount contended it had light-duty work available to Mr. Hannigan for all relevant periods, but he failed to make any attempt at returning to work at Paramount. Accordingly, Paramount contended he cannot recover temporary disability benefits.

## Findings of Fact and Conclusions of Law

### Standard applied

Because this case is in a posture of an Expedited Hearing, Mr. Hannigan need not

prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015). In analyzing whether he has met his burden, the Court will not remedially or liberally construe the law in his favor, but instead shall construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Mr. Hannigan nor Paramount. *See* Tenn. Code Ann. § 50-6-116 (2015).

To be compensable, Mr. Hannigan must show his alleged injury arose primarily out of and in the course and scope of his employment and was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14)(A) (2015). Further, he must show, "to a reasonable degree of medical certainty that [his alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(14)(D) (2015).

*Causation*

Mr. Hannigan's description of his injury is uncontroverted. In addition to his own testimony, Mr. Rhodebeck testified he had no reason to doubt Mr. Hannigan was hurt at work. Thus, the Court finds Mr. Hannigan established an incident identifiable by time and place of occurrence. Accordingly, the Court turns to whether Mr. Hannigan has shown the incident contributed more than 50% to his disablement or need for medical treatment.

Dr. Ferguson testified by deposition that the L5-S1 herniation, based upon his examination and Mr. Hannigan's report of symptoms, "more likely than not" arose primarily out of and in the course of his employment with Paramount. (Ex. 8 at 14, *lines* 11-17.) Likewise, it is "more likely than not" the injury at Paramount aggravated the L4-L5 level of Mr. Hannigan's lumbar spine and "to a reasonable degree of medical certainty" the aggravation "arose more than 50 percent from his work activities . . . considering any other possible causes [the doctor was] aware of." *Id.* at 36, *lines* 12-22. The Court finds this testimony sufficient to establish medical causation.

In so finding, the Court has considered Paramount's argument regarding Mr. Hannigan's behavior following the incident as being inconsistent with him having suffered a herniated disc. Both at trial and during consideration of this case, the Court reviewed the video from Paramount's terminal. Admittedly, the work performed by Mr.

6

Hannigan in the video appears strenuous. However, the video does not refute Mr. Hannigan's testimony that an incident occurred earlier in the day; an incident Mr. Rhodebeck confirms Mr. Hannigan reported. Likewise, the Court finds the injury was sufficiently serious that Mr. Hannigan requested medical treatment on the date of injury, despite Mr. Rhodebeck's evidence to the contrary.[5]

The medical evidence supports a finding that Mr. Hannigan's completion of his work on July 28, 2015, does not rule out the occurrence of an injury. Dr. Ferguson testified injuries might "progress" over time. (Ex. 8 at 32.) Moreover, Dr. Ferguson did not rule out the ability of a patient to continue working after a L5-S1 disc herniation by stating, "it depends on the degree of the herniation." *Id.* at 31. Mr. Hannigan testified credibly regarding the occurrence of his injury and that his pain gradually worsened over time to a point of debilitation. His wife's corroboration of this testimony was equally credible. The Court also notes the medical records support both his version of the incident and his pain complaints.[6] Under the applicable standards of an Expedited Hearing, the Court is convinced Mr. Hannigan suffered an injury, still undefined as to severity, when he stood up after bending to lift a bundle of uniforms.

*Medical benefits*

Our Appeals Board recently addressed a situation where an employer declined to provide medical benefits based upon a challenge to the employee's credibility and the employer's belief that the injury resulted from a pre-existing condition. In *Lewis v. Merry Maid,* No. 2015-06-0456, 2016 TN Wrk. Comp. App. Bd. LEXIS 19 (Tenn. Workers' Comp. App. Bd. Apr. 20, 2016), the employee alleged a back injury. She complained of back pain to both a trainer and a manager. When a dispute arose between the parties, the employee quit and threatened to file a workers' compensation claim. The employer

---

[5] Mr. Hannigan asserts Mr. Rhodebeck directed him to Concentra on the date of injury; Mr. Rhodebeck counters he did not because Mr. Hannigan did not ask for medical attention. However, Mr. Rhodebeck admits Concentra is where he would have sent Mr. Hannigan if he had asked for medical attention. Regardless, whether Mr. Rhodebeck did or did not refer Mr. Hannigan to Concentra is not dispositive to the outcome.

[6] The Court notes Tennessee authority to the effect that an inaccurate history will not support a finding of causation. Namely, at least two Workers' Compensation Panels have addressed the issue. In *Hamilton v. Danka*, No. 02S01-9806-CH-00051, 1999 Tenn. LEXIS 398 (Tenn. Workers' Comp. Panel July 30, 1999), the court determined an opinion based upon a faulty hypothetical as to the extent of repetitive use of the hands could not form the basis of a valid causation opinion. Similarly, in *UPS v. Cameron*, No. E2013-02001-SC-R3-WC, 2014 Tenn. LEXIS 609 (Tenn. Workers' Comp. Panel Aug. 15, 2014), the panel affirmed a trial court that had given greater weight to treating physicians as opposed to physicians who "relied on [an] inaccurate medical history provided by the employee." *Id.* at *16. Here, Mr. Hannigan was consistent in his history to all providers. Though he worked the rest of his shift, the testimony of Dr. Ferguson does not compel a finding the work performed after the incident on July 28, 2015, undermines his causation opinion. Mr. Hannigan could have been injured and continued to work under the evidence presented.

7

prevailed on its argument against medical causation, but the Appeals Board upheld an award of medical benefits stating:

> [T]he trial court determined that Employee did come forward with sufficient evidence to establish her entitlement to a panel of physicians. Specifically, the trial court noted Employee's testimony that she experienced back pain after operating the vacuum during each of her three days of training and that she promptly informed her [supervisor and a manager] of her back pain. . . . Employer did not refute . . . these allegations.

> Moreover, [the manager] admitted that Employee did not appear to be experiencing back pain at the time she interviewed for the job. [The manager] acknowledged Employee complained of back pain after one or more of her training sessions and admitted she was aware Employee intended to go to the emergency room for her back pain. The record is clear that Employee was not offered a panel of physicians because [the manager] believed Employee's back pain related only to a preexisting condition.

> [O]n appeal, Employer insists that the trial court's decision to order a panel of physicians was based solely on Employee's testimony and that it had effectively challenged her credibility during the expedited hearing. While we agree that Employee's credibility was called into question on several issues, we find that the trial court did not rely solely on Employee's testimony. In fact, the trial court specifically commented that [employer] "corroborated [Employee's] testimony" and that "[t]he medical evidence presented, although not entirely clear, supports [Employee's] allegation that she began suffering severe back pain while working for [Employer], which she attributed to using the vacuum cleaner." Finally, the trial court commented, "[t]here is no medical proof establishing otherwise." Therefore, we find, contrary to Employer's argument, that the trial court weighed Employee's testimony in light of Employer's challenges to her credibility and also relied on the testimony of [employer] and the medical records submitted by the parties to reach its determination.

*Lewis*, at *7-8.

The Court finds the facts of *Lewis* remarkably similar to the facts of this case. Like the employer in *Lewis*, Paramount does not dispute the occurrence of an incident. In addition, like the employee in *Lewis*, Mr. Hannigan did not complain of back pain to Mr. Rhodebeck before the incident in question. Though Paramount argues Mr. Hannigan's pre-existing condition contributed to his injury, as did the employer in *Lewis,* there is no medical proof in this case to that effect. Finally, though Paramount questions Mr.

8

Hannigan's credibility by his continuing to work on the date of injury, like in *Lewis*, there is lay corroboration of the incident by Mr. Rhodebeck and medical proof of causation through Dr. Ferguson. The Court finds Mr. Hannigan has come forward with sufficient medical evidence to support an order compelling medical treatment.

Paramount does not dispute it provided a panel from which Mr. Hannigan chose Dr. Ferguson. Dr. Ferguson then referred Mr. Hannigan to Dr. Waggoner. The Court finds Dr. Waggoner is an authorized physician whose services Paramount discontinued only after denial of the claim and, given the findings herein, Mr. Hannigan may return to him for further evaluation and treatment.

*Temporary disability benefits*

Temporary total disability is payable to an employee who is totally disabled to work by an injury for the period he is recovering as far as the nature of his injury permits. *Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 776 (Tenn. 2000). Under Tennessee law, to establish entitlement to temporary total benefits, Mr. Hannigan must show he "was (1) totally disabled to work by a compensable injury; (2) that there was a causal connection between the injury and his inability to work; and (3) the duration of that period of disability." *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015). TTD benefits terminate when an employee demonstrates the ability to return to work or attains MMI. *Id.* Temporary partial disability benefits, a category of vocational disability distinct from temporary total disability, is available when the temporary disability is not total. Specifically, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Id.* at *8. Thus, in circumstances where the treating physician has released the injured worker to return to work with restrictions and the employer either (1) cannot return the employee to work within the restrictions or (2) provides restricted work for a lower wage than the employee's average weekly wage, the injured worker may be eligible for temporary partial disability. *Id.*

In this case, Mr. Hannigan had restrictions as of his first visit to Concentra on July 28, 2015. However, he does not assert entitlement to temporary disability for any period before August 13, 2015, the date of his first visit to Dr. Ferguson. Dr. Ferguson placed Mr. Hannigan off work as of that date and maintained his off work status at the August 28, 2015 visit. On September 1, 2015, Dr. Waggoner adjusted Mr. Hannigan's work status to restricted duty. Given its finding of adequate causation, the Court also finds Mr. Hannigan is entitled to temporary total disability for the period of August 13, 2015, through September 1, 2015, based upon Dr. Ferguson placing Mr. Hannigan on an off work status.

The Court cannot award temporary total disability benefits for any other period.

9

There is no medical proof that Mr. Hannigan was *totally* disabled from working at any time apart from the period described above. Likewise, the Court cannot award temporary partial disability benefits for any other period. Paramount established, through Mr. Rhodebeck's testimony, that it had available work within Mr. Hannigan's restrictions as of August 13, 2015. Mr. Rhodebeck confirmed that Paramount would have accommodated Mr. Hannigan thereafter. Mr. Hannigan made no effort to return to work at Paramount at any time. Further, he returned to work in October 2015 and worked, apparently steadily, through February 2016. Nevertheless, he asserts entitlement to temporary total disability during those times. The Court cannot award disability benefits to an employee who is able to work, and will not award disability benefits to an employee based upon only his subjective determination he cannot work at any job even if within his restrictions.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Hannigan shall receive medical benefits from Paramount for evaluation and treatment of his back injury of July 28, 2015. Paramount shall authorize a return appointment with Dr. Stephen Waggoner who will determine reasonable and necessary medical treatment for Mr. Hannigan's injury of July 28, 2015.

2. Mr. Hannigan is entitled to temporary total disability benefits for the period of August 13, 2015, to September 1, 2015, a period of two weeks and three days. At a rate of $820.53 per week, this equals $1,985.68.

3. At this time, Mr. Hannigan has not shown entitlement to temporary disability benefits for any of the other requested periods.

4. This matter is set for an Initial (Status) Hearing on July 13, 2016, at 10:00 a.m. Central time.

**ENTERED this the 26th day of April, 2016.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

10

Initial (Status) Hearing:

An Initial (Status) Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3.  Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4.  The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing

Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Medical Records of Concentra Medical Centers;
2. Medical Records of Methodist Minor Medical Center;
3. Medical Records of Memphis Orthopaedic Group;
4. First Report of Work Injury;
5. Wage Statement;
6. Accident Fund Employee's Report of Work Injury;
7. Choice of Physician Form C-42; and
8. Deposition of Dr. Christopher Allen Ferguson.

Technical record:
1. Petition for Benefit Determination, filed on August 25, 2015;
2. Dispute Certification Notice, filed on October 14, 2015;
3. Request for Expedited Hearing, filed on October 14, 2015; and
4. Affidavit of Sean Hannigan.[7]

---

[7] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 26th day of April, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Adam W. Selvidge, Esq. Employee's Counsel | | | X | adams@calljmb.com |
| Gordon C. Aulgar, Esq. Employer's Counsel | | | X | Gordon.aulgar@accidentfund.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

14